[No. 26622. Department Two. June 28, 1937.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY BRADLEY, *Appellant*.[1]

[1]Reported in 69 P. (2d) 819.

·*Andrew L. Ulvestad,* for appellant.

*B. Gray Warner* (*Paul Coughlin,* of counsel),· for respondent.

BEALS, J.—Henry Bradley was by information charged with the crimes of grand and petit larceny. The information contained eight counts, three alleging facts constituting grand larceny, and five charging the lesser crime. The counts were all based upon checks drawn by defendant during the month of April, 1935, which checks were not paid by the drawee bank because Bradley's account lacked funds sufficient to cover them.

Defendant entered pleas of not guilty, and at the close of the state's case, the court, on defendant's motion, dismissed two of the counts contained in the information, one charging grand and the other petit larceny. The evidence on the other six counts was by the trial court submitted to the jury, which returned on each count a verdict of guilty as charged. A motion for a new trial having been overruled, judgment and sentence were entered upon the verdict, from which the defendant has appealed.

Error is assigned upon the admission of certain evidence and upon the refusal of the trial court to strike the same; upon the overruling of appellant's challenge to the sufficiency of the evidence; upon the denial of appellant's motion for a mistrial on the ground of misconduct of ·counsel for the state; and upon the re-

fusal of the trial court to grant appellant a new trial.

The case was submitted to the jury upon the evidence introduced by the state, appellant having introduced no testimony.

■ Over appellant's objection, the court permitted the chief bookkeeper of the bank upon which the unpaid checks were drawn to testify from the bank records that other checks not referred to in the information had been drawn by appellant upon the bank and payment thereof refused because of insufficient funds or because the account had been closed. Appellant assigns error upon the court's refusal to strike this testimony, relying upon the general rule that,

"On a prosecution for a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible." 16 C. J. 586, § 1132.

Appellant contends that evidence concerning these other checks should not have been admitted, even to show intent, or as tending to prove that appellant, in issuing the checks referred to in the information, was following a general plan or scheme, and also for the reason that it does not appear that the other checks, concerning which the official of the bank testified, were not post-dated checks, and for that reason not within the statute under which appellant was prosecuted.

The evidence introduced by the state showed that the checks upon which the information was based were drawn by appellant to cover wages earned by workmen who had been employed by appellant during the week in which the checks were drawn. During the month of March, 1935, appellant opened in the city of Seattle a business known as "Cedar Coat Company,"

and about April first following, he commenced operations under the name of "Nation Wide Lacquer Shop" for the repair and refinish of automobiles. Appellant obtained considerable business, and paid some of the workmen he employed for their services. Saturday, April 20th, appellant issued a number of wage checks, which were unpaid, and resulted in the prosecution now before us. Appellant apparently abandoned his business shortly after issuing these checks, and went to Oregon.

While the information may be said to be based upon the crime of larceny, it actually charges a purely statutory offense, a crime very different from common law larceny, to-wit, a violation of Rem. Rev. Stat., § 2601-2 [P. C. § 8887], which reads as follows:

"Any person who shall with intent to defraud make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or depository, to meet said check, in full upon its presentation, shall be guilty of larceny. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person, without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud."

The employee of the bank who testified from the bank's ledger sheet as to the status of appellant's account during the period in which the checks referred to in the information were drawn, testified also as to a number of other checks which appellant had drawn on the same bank at approximately the same time as the checks referred to in the information, and that these other checks were also unpaid for want of sufficient funds in appellant's account to cover them. Appellant did not object to the evidence concerning

these other checks at the time the same was received, but later moved to strike all such evidence, and excepted to the court's denial of his motion. The court, referring to these checks, instructed the jury as follows:

"Any evidence which may have been received in this case concerning checks other than those upon which the various counts of the information are based has been permitted by the court for only one purpose and that is for the bearing, if any, you may consider it to have upon the question of the defendant's intent as regards the checks described in the information. If you consider such evidence you should consider it only if and only insofar as you find it bears upon the question of defendant's intent as to the checks described in the information."

This instruction became the law of the case, although respondent argues that the same gave appellant an advantage not warranted by the law governing the matter now under discussion.

In this connection, the general rule relied upon by appellant, above referred to, is firmly established, and has repeatedly been followed by this court. This rule is, however, subject to well recognized exceptions, and, as this court stated in the case of *State v. Edelstein*, 146 Wash. 221, 262 Pac. 622,

". . . evidence . . . does not become irrelevant or incompetent, merely because it also tends to show that the accused has committed another crime, unrelated to the one for which he is being tried."

A similar rule has been followed in the cases of *State v. Macleod*, 78 Wash. 175, 138 Pac. 648; *State v. Kreiss*, 133 Wash. 256, 233 Pac. 649; *State v. Ball*, 153 Wash. 316, 279 Pac. 735; *State v. Clamp*, 164 Wash. 653, 3 P. (2d) 1096, 80 A. L. R. 1302.

One of the exceptions is well described in 16 C. J., title "Criminal Law," § 1137, p. 589, under sub-title "Intent," as follows:

"Evidence of other crimes similar to that charged is relevant and admissible when it shows or tends to show a particular criminal intent which is necessary to constitute the crime charged. Any fact which proves or tends to prove the particular intent is competent, and cannot be excluded because it incidentally proves an independent crime."

The cases of *People v. Bercovitz*, 163 Cal. 636, 126 Pac. 479, 43 L. R. A. (N. S.) 667; *People v. Hamby*, 55 Cal. App. 37, 202 Pac. 907; *Huffman v. State*, 205 Ind. 75, 185 N. E. 131; *State v. Robinson*, 120 Ore. 508, 252 Pac. 951; *Beach v. State*, 28 Okla. Crim. 348, 230 Pac. 758, are very much in point on this phase of the case.

In this connection, it should be noted that the cases of *State v. Bokien*, 14 Wash. 403, 44 Pac. 889, and *State v. Pilling*, 53 Wash. 464, 102 Pac. 230, 132 Am. St. 1080, seem to support appellant's position in the case at bar. In the *Bokien* case, it was held that, in a prosecution for obtaining goods under false pretenses by the giving of a check upon a bank in which the defendant had no funds, it was error to allow the prosecution to introduce evidence concerning other checks drawn by the defendant in favor of other persons, when the drawer had no funds on deposit with which to meet the same. It should be noted that, in the case cited, the defendant was charged with obtaining property under false pretenses, it appearing that he procured a chattel in exchange for the check which was not good. The defendant was not charged with drawing a check upon a bank in which he had no or an insufficient account, and evidence admitted over the defendant's objection, to the effect that, prior to the giving of the check in question, he had drawn other checks which were not paid, was properly held incompetent. In the case at bar, appellant was charged with a crime under that section of the statute above

quoted, which makes it an offense, under certain circumstances, to draw a check knowing that the drawer is not entitled to make the same.

In the case of *State v. Norris,* 27 Wash. 453, 67 Pac. 983, the case of *State v. Bokien* was referred to, the court observing that the testimony which had in that case been held incompetent

". . . bore no relation to the crimes charged, and was not connected with any chain of circumstances which tended to prove guilt of the particular crimes charged."

In the case of *State v. Brunn,* 149 Wash. 522, 271 Pac. 330, in which the defendant had been charged with the crime of forgery, we cited the *Bokien* case, noting that, in that case, the act itself proved the intent, and reasoning, therefore, that the objectionable evidence was inadmissible as not necessary to prove any general intent. In the *Bokien* case, the defendant had admitted giving the check, and that he knew there were no funds on deposit to cover the same, his defense being that he explained this matter at the time to the person who delivered him property in exchange for the check—a very different state of facts from that here presented. We conclude that the decision of this court in the case of *State v. Bokien* is not controlling in the case at bar.

In the case of *State v. Pilling, supra,* it was merely held that the drawing of a check with knowledge that there were no funds on deposit to meet the same did not give rise, as matter of law, to a presumption of intent to defraud. This case was decided prior to the enactment of § 2601-2, *supra,* and in view of this statute, is no longer applicable to the situation here presented.

It appears from the record before us that the appellant was conducting an automobile repair business,

employing a number of workmen and purchasing articles of personal property for use in connection therewith. The fact that he drew a considerable number of other worthless checks at approximately the same time he drew the checks described in the information was competent evidence to show a general plan of operations, and that appellant knew that the checks described in the information would not be paid upon presentation. Appellant had the full right of cross-examination, and could have asked for all relevant data concerning these checks, and particularly whether or not any of them were post-dated. If on cross-examination appellant had endeavored to elicit relevant and competent evidence which had not been forthcoming, a question quite different from that before us would have been presented.

Careful examination of the authorities convinces us that the trial court did not err in refusing to strike the evidence as to the drawing of other unpaid checks by appellant.

 Appellant next argues that, as the statute under which appellant was informed against makes an intent to defraud the basis of the offense of drawing a worthless check, and as the checks referred to in the information, and which were not paid, were by appellant given in purported settlement of accounts for wages earned, and as undoubtedly the giving of a worthless check did not extinguish the employee's claim, the employee was not defrauded and no intent to defraud existed. In support of this argument, appellant cites the case of *State v. Pishner*, 72 W. Va. 603, 78 S. E. 752, in which it was held that, under a statute making it an offense to deliver to another a check on a bank without sufficient funds to pay the same, thereby obtaining from the other money or property, no offense had been committed in delivering a worthless check

in payment of a preexisting debt. Appellant also cites the case of *Berry v. State,* 153 Ga. 169, 111 S. E. 669, 35 A. L. R. 370, in which it was held that one who gives a worthless check in payment of a past due debt is not an offender under a statute providing for the punishment of one who with intent to defraud draws a worthless check.

This particular question has not heretofore been presented to this court. In the first place, it should be observed that the law under which appellant was informed against charges a statutory, not a common law, larceny. The gist of the offense under this section of the statute is not the obtaining of something of value by fraud or by giving a worthless check (as was the offense charged in the case of *State v. Pishner, supra*), the gist of the statutory offense here in question being in drawing or delivering, with fraudulent intent, a check, knowing that no funds are on deposit to pay the same. The statute contains no provision to the effect that any property must be procured on or for the check. Such an offense is covered by another section of the criminal code.

Common business experience tells us that the evils sought to be prevented by the statute were serious in their nature and of frequent occurrence. It is equally evident that the statute is a strict one, and that the gist of the offense lies in the intent to defraud and the knowledge of the worthlessness of the check. We are convinced that the statute may be violated by the giving of a worthless check in purported payment of a past due indebtedness.

Whether in any individual case the statute has been violated is, of course, a question for the court and jury. The delivery of the check might maintain the drawer's credit for a limited period of time; it would doubtless, in most cases, lead the payee to

believe that his claim had, in fact, been paid; and the act would give the payee of the check a feeling of security. The delay procured by the turning over of worthless paper may support a finding that intent to defraud existed within the meaning of the statute. As was held in the case of *People v. Williams,* 69 Cal. App. 169, 230 Pac. 667, the criminal intent of the drawer of a worthless check cannot be made to depend upon the subsequent success or failure of his enterprise. Beyond question, one who issues a worthless check does so for some supposed advantage or satisfaction to accrue to himself, and not for the purpose of benefiting the payee.

It has been held that the crime of forgery is complete with the making of a false instrument with the intent to defraud, and that whether or not anyone has actually been defrauded, if the intent to defraud be shown, is immaterial. *People v. Meyer,* 289 Ill. 184, 124 N. E. 447.

The supreme court of the United States, in the case of *United States v. Plyler,* 222 U. S. 15, 32 S. Ct. 6, which concerned a charge of forgery, said:

"It now must be regarded as established that 'it is not essential to charge or prove an actual financial or property loss to make a case under the statute.'"

In the case of *State v. Lowenstein,* 109 Ohio St. 393, 142 N. E. 897, 35 A. L. R. 361, the supreme court of Ohio, in a case almost directly in point on the matter which we are now discussing, held that money damage need not be shown in order to complete the crime.

"All that is necessary is the issuing of the check upon a bank or depositary by one who at the time has insufficient funds or credit; the issue being made with intent to defraud."

The supreme court of Arizona, in the case of *State v. Meeks,* 30 Ariz. 436, 247 Pac. 1099, adopted the rule which we approve, and relying upon several of the

cases above cited, held that facts quite similar to those before us constituted a violation of the statute.

The case of *People v. Kahn*, 41 Cal. App. 393, 182 Pac. 803, is to the same effect. In so far as the Georgia case of *Berry v. State, supra,* lays down a contrary doctrine, we decline to follow it, deeming the majority rule the better.

We conclude that a check or draft, drawn under the conditions set forth in § 2601-2, *supra,* and delivered in purported settlement of a past due indebtedness, may be, and is under the facts of this case, sufficient to support a conviction of violation of the provisions of the section referred to.

■ It appears that counsel for the state, in his argument to the jury, stated in effect that appellant floated the largest possible number of bad checks at the same time, and then absconded, and that it was appellant's plan to move from town to town, operating such a fraudulent scheme. Upon objection by appellant's counsel, the trial court sustained appellant's objection to this line of argument, and instructed the jury to disregard what counsel for the state had said in that connection. It cannot be held that the argument complained of was of such a nature and so highly prejudicial that the error could not be cured by the court's prompt instruction to disregard the same.

It appears ·that two of appellant's unpaid checks, outside of those referred to in the information, were referred to in the evidence before the jury and introduced in evidence. These checks were not withdrawn. The checks had been referred to by a witness for the prosecution, and as we have held, *supra,* that testimony concerning the same was properly received, the admission of these two checks in evidence cannot be held to constitute reversible error.

The court properly denied appellant's challenge to the sufficiency of the evidence, and we find nothing in the record which supports appellant's contention that the trial court should have granted his motion for a new trial.

The record being free from error, the judgment appealed from is affirmed.

STEINERT, C. J., HOLCOMB, GERAGHTY, and ROBINSON, JJ., concur.