[Crim. No. 136.    Department One.—March 13, 1897.]

## THE PEOPLE, RESPONDENT, v. JAMES EAGAN, APPELLANT.

CRIMINAL LAW — ELECTION FRAUDS — INDICTMENT — CONSPIRACY — COMPLETED OFFENSE—DUPLICITY.—An indictment under the "Act to promote the purity of elections," charging that six defendants, who were officers at an election precinct, confederated and conspired together to sign, certify, and attest, as true and genuine, the tally lists and returns of the precinct, each knowing that the returns signed and certified by him were false and untrue in certain particulars specified, in falsely increasing the votes of one candidate for county clerk, and falsely diminishing the votes of another candidate for the same office, does not state a conspiracy as a substantive offense, but charges only one completed felony, in which the precedent acts of conspiracy were merged, and is not demurrable for duplicity.

ID. — INSUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE — OPPORTUNITY FOR FRAUD—FACTS CONSISTENT WITH INNOCENCE—FAILURE OF PROOF—QUESTION OF LAW.—Circumstances relied upon to establish the guilt of one accused of crime must not only be consistent with that hypothesis, but also inconsistent with any other rational conclusion; and, where there were other election officers, who were not before the court, but who had equal opportunity for fraud with the defendants charged with the offense, the mere testimony of each of five codefendants as witnesses for the people, that he had himself honestly performed his part of the work, is insufficient to convict the other defendant, there being no evi-

dence, aside from error in the returns, that the other defendant ever indicated, by word or act, an intent to falsify the vote, or that he had any motive to do so; and he, having testified in his own behalf that he had honestly performed his part of the work, and had no knowledge of any error when he joined in certifying the returns; but, in such case, every fact proved is consistent with the reasonable conclusion that the false return resulted, without his connivance, from the acts of persons who had equal opportunity with him, and, there being no evidence to exclude this inference, there is a failure of proof in a particular necessary to conviction, and the question is one of law for the court.

Appeal from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion.

*Dunne & McPike,* and *S. H. Regensberger,* for Appellant.

The information charges more than one offense, and is, therefore, obnoxious to the criticism of duplicity made by the demurrer. (Pen. Code, sec. 954; *People v. Alibez,* 49 Cal. 452; *People v. Hood,* 6 Cal. 236; *People v. Lee,* 107 Cal. 477; *People v. Aro,* 6 Cal. 208; 65 Am. Dec. 503; *People v. Ward,* 110 Cal. 369.) The facts proven are entirely consistent with the defendant's innocence, and, therefore, are not sufficient to sustain a conviction. (*People v. Gosset,* 93 Cal. 641-44.)

*Attorney General W. F. Fitzgerald,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

The information charges but one offense, and is sufficiently specific. (*People v. Edson,* 68 Cal. 549; *People v. Marseiler,* 70 Cal. 98; *People v. Donaldson,* 70 Cal. 116; *People v. Rogers,* 81 Cal. 259; *People v. Forney,* 81 Cal. 118; *People v. Russell,* 81 Cal. 616; *People v. Savercool,* 81 Cal. 650; *People v. Tonielli,* 81 Cal. 275; *People v. Mahlman,* 82 Cal. 585; *People v. Naylor,* 82 Cal. 608; *People v. Harold,* 84 Cal. 567; *People v. Keeley,* 81 Cal. 210.)

Britt, C.—Six persons, inclusive of appellant, who were officers of election in and for a certain precinct of

the city and county of San Francisco at the general election held November 6, 1894, are jointly accused by the indictment in this cause of felony committed in violation of the "Act to promote the purity of elections." (Stats. 1893, p. 24.) Eagan was tried separately and convicted.

1. It is provided in section 27 of said act that "Every person who willfully adds to or subtracts from the votes actually cast at an election, in any official or unofficial returns, or who alters such returns, is punishable by imprisonment, etc." Disentangled from the verbiage with which it is embarrassed, the substance of the charging part of the indictment is that defendants confeder‑ ated and conspired together to sign, certify, and attest, as true and genuine, the tally lists and returns of said election in said precinct, and did knowingly act in vio‑ lation of the laws relating to elections, by signing, cer‑ tifying, and attesting, as true and correct, tally lists and returns which showed that M. C. Haley had received sixty-three of the votes cast at said election in said pre‑· cinct for the office of county clerk, and that C. F. Curry had received one hundred and forty-three of such votes; whereas in truth and in fact Haley had received ninety‑ one votes for said office, and Curry had received one hundred and two votes; that each of the defendants knew the returns signed and certified by him to be false and untrue in the particulars specified, contrary to the form of the statute, etc. The indictment might have been improved in the quality of distinctness, but there is no duplicity in it as urged by appellant; the defend‑ ants are accused of a single offense, viz., adding to the votes cast for Curry and subtracting from those for Haley, contrary to the provision of said section 27. The allegation that the defendants confederated and conspired, etc., was not the statement of a substantive offense, as appellant supposes; a completed felony was charged, and in this the precedent acts of conspiracy were merged; when several acts together constitute one offense, they may be alleged in a single count, and the

present indictment does no more than this.    (1 Bishop's
Criminal  Procedure, sec. 438; *People* v. *Gusti,* 113 Cal.
177.)

2.  But our examination of the record  has compelled
the conclusion that the evidence did not warrant the
verdict of guilty.   The board conducting the election
at said precinct consisted of three inspectors and three
judges; there were besides six clerks; Eagan was one of
the inspectors; the law  (Pol. Code, sec. 1142) allows
members of the board to relieve one another in the duty
of canvassing the vote, but requires the final certificate
to be signed  by a majority of the whole.   The offices to
be filled at said  election were numerous, and the count
of the vote proceeded continuously for more than thirty
hours after close of the polls.   The only part taken by
Eagan in the count was "calling off" for a few hours;
that is, he read from the ballots the names of candi-
dates voted for, while mark or tally was kept by others
of the votes announced by him; he was thus engaged at
intervals which together comprised but a comparatively
small portion of the time occupied in the count.   Other
members of the board of election and some of the clerks
—eight or nine in all—were successively engaged in
the business of "calling. off."   Eagan signed the certi-
ficate of the totals which was prepared by some of the
clerks.   Such certificate varied from the fact in the
matter of the vote for county clerk as alleged in the in-
dictment; the discrepancy was detected, it seems, upon
a contest instituted in court where a recount from the
ballots was had.   Each of the codefendants of appellant
was introduced as a witness by the people and each
testified that himself had honestly performed his part
of the work of counting and returning the vote.   This
was virtually the sum of the evidence for the prosecu-
tion.   There was no evidence—aside from the error in
the returns—that appellant ever indicated by word or
act an intent or desire to falsify the vote, or that he
had any motive to do so; "watchers" who scrutinized
the count were in attendance during the progress

thereof, but none suggested that appellant was perpe-
trating wrong. He was sworn in his own behalf and
testified that he read the ballots correctly and honestly,
and had when he joined in certifying the return list no
knowledge of any error; that he did not know Curry,
and had no interest in his election.

The case for the prosecution was circumstantial; it
was not claimed that the returns were altered in any
particular, or did not correspond with the tally lists; so
that the error, whether fraudulent or otherwise, must
have occurred in reading from the ballots or in tally-
ing; there was a gross error in the returns, and appel-
lant had the opportunity for its commission. But
others had had the same opportunity; we are not deal-
ing with the conditions which might be presented if all
the persons who had facilities for perpetrating the
crime charged had been sworn and all had alike purged
themselves as did the six defendants aforesaid; possibly
in such a case it would be solely for the jury to deter-
mine whether there was fraudulent error and where the
responsibility lay; but here several persons who as mem-
bers of the board or as clerks had " called off " votes, or
had kept tally, were not before the court, and their work
was in no manner vindicated. It is elementary law
that circumstances relied upon to establish the guilt of
one accused of crime must be consistent with that
hypothesis and inconsistent with any other rational
conclusion. Ordinarily, the deduction to be drawn from
the circumstances is for the jury, but in this instance it
is manifest that every fact proved is consistent with the
reasonable conclusion that the false return resulted,
without appellant's connivance, from the acts of per-
sons who had equal opportunity with him, and that
there is no evidence tending to exclude this inference;
there is, therefore, a failure of proof in a particular nec-
essary to conviction, and the question is one of law for
the court. (*People* v. *Martin*, 2 Cal. 484; *People* v. *Jones*,
31 Cal. 565; *People* v. *Darr*, 61 Cal. 554; Burrill on Cir-
cumstantial Evidence, 181, et seq.)

We are fully sensible of the flagrancy of the offense charged, and of the need and importance of strictly enforcing the law designed for its prevention and the prevention of all similar practices; they justly excite public alarm and resentment; but while these considerations incite to vigilance for the suppression of such evils, they suggest also caution lest the result of a trial is reached through the operation of sentiment noted by Sir Matthew Hale in treating of another crime: "The heinousness of the offense many times transporting the judge and jury with so much indignation that they are over-hastily carried to the conviction of the persons accused thereof." The judgment and order denying a new trial should be reversed.

BELCHER, C., and SEARLS, C., concurred.

For the reason given in the foregoing opinion the judgment and order denying a new trial are reversed.

GAROUTTE, J., VAN FLEET, J., HARRISON, J.